UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     Plaintiff,<br>vs.<br><br>AMANDA RENEE SCHNEIDER,<br>     Defendant, | Case. No.: 18-cr-00054-KES-3 |

## **DEFENDANT AMANDA RENEE SCHNEIDER'S SENTENCING MEMORANDUM**

The defendant, Amanda Renee Schneider by and through her undersigned counsel, Jason W. Kreiss, Esq., and pursuant to U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), ((2) and (f), and the Fifth and Sixth Amendments to the United States Constitution, files this sentencing memorandum respectfully requesting that the Court ratify the joint sentencing recommendation contained in the Plea Agreement Supplement (DE 109), and as grounds therefore, states as follows:

**INTRODUCTION:**

On January 7, 2018, Amanda Renee Schneider will stand before this Honorable Court for sentencing having entered a guilty plea to a one count superseding information. Ms. Schneider accepted responsibility for her actions the moment that she was made aware that she was under indictment in the District of North Dakota. Ms. Schneider does not object to either the Offense Conduct or Guideline sections of the PSR. By way of this filing, this Court will be asked to take into consideration the *history and characteristics* of Ms. Schneider,

as well as the remaining sentencing factors of 18 U.S.C. § 3553(a), in formulating a sentence that is *reasonable but not greater than necessary*.

Pursuant to *U.S. v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has adopted a three-step approach. (See Fed. R. Crim. P. 11(M), amended December 1, 2007, and Amendment 741 of the Sentencing Guidelines, effective November 1, 2010.)   First, the Court is to determine the *advisory* guideline range. Pursuant to the written plea agreement, at paragraph 13, the parties agree that pursuant to U.S.S.G. § 2D1.1(c)(8), the base offense level is 24.  The parties further agree that a 2-level reduction is applicable if the defendant satisfies the criteria of U.S.SG. § 5C1.2.  The parties also agree that no other guideline enhancements apply.   In paragraph 14, the United States agrees to recommend a reduction of 3-levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)(b).  Pursuant to the PSR, the total offense level is 19, criminal history category 1; therefore the *advisory* guideline imprisonment range is 30 -37 months.  The PSR is consistent with the agreement of the parties and there are no legal or factual objections.

Second, the Court is to consider if there are any factors that may warrant a departure from the *advisory* guideline range.  The PSR, at paragraph 71, does not identify any factors that may warrant a downward departure from the *advisory* guideline range and the defendant will not be seeking relief in the form of a departure.

Lastly, the Court is to consider all of the sentencing factors of 18 U.S.C. § 3553(a)(1-6) and impose a sentence which is reasonable but not greater than necessary to achieve the sentencing objectives set forth in 18 U.S.C. § 3553(a)(2). As set forth more fully below, Ms. Schneider, through counsel, believes there are sentencing factors worthy of this Court's consideration.

**History and Characteristics of Defendant:**

Amanda Schneider will stand before this Honorable Court for sentencing contrite and remorseful, a different person than she was in September 2016 at the conclusion of her participation in the illegal conduct in this case. Prior to the instant offense, Amanda's involvement in the criminal justice system consisted of an arrest for possessing a fake ID for the purpose of entering a local bar prior to turning 21 years old. Amanda's conduct before and after the instant offense are telltale of her true character.

More than two years has elapsed since Amanda's involvement in the offense conduct concluded. In considering Amanda's *history and characteristics* it is respectfully requested that the Court take into consideration Amanda's actions after the conclusion of the criminal conduct until the present time. See *Pepper v. United States*, 131 S. Ct. 1229 (2011). The Court in Pepper specifically addressed the importance of considering post-offense conduct

stating, "the punishment should fit the offender and not merely the crime". See also Williams v. New York, 337 U.S. 241, 247 69 S. Ct. 1079(1949).

In the instant case Amanda immediately took responsibility for her actions and has continued to prove through her post-offense conduct that she can be a productive member of society. Rather than returning home and seeking a source of "easy money", Amanda returned to her roots and sought gainful employment to support herself and her son. Similarly, Amanda's voluntary post-offense conduct supports the finding in the Post-Conviction Risk Assessment that found that she was a Level 1, which correlates with the lowest recidivism rate.

As aptly stated in the PSR, Amanda's "*situation is atypical of others who are involved with drugs and distribution. Prior to her involvement, she led a rather conventional and crime-free lifestyle*". See PSR P. 12 ¶ 44   This factor is particularly important when considering what a *reasonable* sentence is for Amanda who became involved in the instant offense when she was in her early 20's and is now 28 years old. Prior to her role in the instant offense, Amanda obtained her GED and was taking college courses working towards an associate degree. In addition to education, Amanda has an extremely strong work ethic illustrated by the fact that she has been gainfully employed in the food service industry since she was 16 years old. Even while still residing with Mr. Bell before moving back home, Amanda started a cell phone service company hoping to close the criminal conduct chapter of her life and Louis'. Ultimately

Amanda made the affirmative choice to leave Mr. Bell with her son and return to her family in Florida to seek employment and proper schooling for her son. Immediately upon returning to Florida Ms. Schneider obtained two jobs and she enrolled her son in school, effectively removing herself from the negative influences on her life. Since her surrender, Amanda has remained on pre-trial release without incident and has maintained her employment both as a server at a local restaurant and as an inventory specialist for a logistics company. What is most notable, is that Amanda made the affirmative choice to leave Mr. Bell and their alternative lifestyle behind prior to any awareness of the investigation or indictment in this case.

     As Amanda acknowledges that she will be incarcerated for a period of time, the very thought of being separated from her son for whom she has sole custody is terribly frightening. In her letter to the Court, Amanda's mother Carol Beck described Amanda's devotion to her son as well as her own her own concerns for the overwhelming emotional and financial responsibility that she and her husband will be saddled with while Amanda is incarcerated. Similar sentiments were expressed by others who submitted letters in support of Amanda: Michael Schneider stated, "She Loves Louis Junior more than I have ever seen a mother love her son"; Steven Beck stated, "[s]he has been trying to do as much as with her son Louis Jr. (5 yrs. Old) She has been making homemade projects for him so he will know she is thinking of him and loves him

during any time she may have to be apart"; Olivia Law Stated, "They have a very special bond and it would be unbearable to see both of them apart."; John-Ross Pontorno stated," I have observed and noticed that she is a teacher, nurturer, and develops her son into a young man".  Although Amanda is not seeking a departure pursuant to U.S.S.G.§ 5H1.6, various Courts have addressed the issue of incarcerating a parent of very young children.[1]

In conclusion, it is clear from Amanda's post-offense conduct that she accepts responsibility for her actions, is remorseful for having participated in this offense and is reformed / rehabilitated, and thus will continue to be a productive member of society.

THIS SECTION INTENTIONALLY LEFT BLANK

---

[1] *U.S. v. Hammond*, 37 F. Supp. 2d 204 (E.D.N.Y.  1999), "a sentence without a downward departure would contribute to the needless suffering of young, innocent children.  *U.S. v. DeRoover*, 36 F. Supp. 2d 531, 532-33 (E.D.N.Y.  1999), "the unique dependence of children on a defendant is a basis for a downward departure." *U.S. v. Chambers*, 885 F. Supp. 12, 14 (D.D.C.  1995), "causing needless suffering of young, innocent children does not promote the ends of justice."  *U.S. v. Johnson*, 964 F. 2d 124, 128-130 (2d Cir.  1992), "we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing."

WHEREFORE based upon the aforementioned facts and circumstances, Amanda Renee Schneider respectfully requests that this Honorable Court consider her *history and characteristics*, her family ties and responsibilities, and other sentencing factors contained in 18 U.S.C. § 3553(a) when fashioning a reasonable sentence that is not greater than necessary.

Respectfully Submitted:

*Jason W. Kreiss, Esq.*
Jason W. Kreiss, Esq.
Florida Bar Number: 87912
Counsel for Defendant Schneider

The Kreiss Law Firm
1824 SE 4th Ave
Fort Lauderdale, Florida 33316
Tel. 954-525-1971
jwk@kreisslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of December 2018, this pleading has been electronically filed with the Clerk of the Court and all parties of record via CMECF.

*Jason W. Kreiss, Esq.*
Jason W. Kreiss, Esq.